[Civil No. 313.   Filed January 26, 1892.]

[29 Pac. 430.]

## YAVAPAI COUNTY, Plaintiff and Appellant, v. WILLIAM O. O'NEILL, Defendant and Appellee.

1. COUNTIES—CLAIM FOR MONEY AGAINST—NECESSITY FOR PRESENTATION OF CLAIM TO BOARD OF SUPERVISORS—REV. STATS. ARIZ. 1887, PARS. 384, 407, 552, CITED AND CONSTRUED AND REMEDY PROVIDED HELD EXCLUSIVE.—Presentation of a claim against a county to the board of supervisors for its action is a condition precedent to the maintenance by the claimant of an action thereon, and the remedy prescribed by statutes, *supra,* for the establishment and enforcement of claims for money against the county is exclusive.

2. SAME—SAME—CLAIMS ALLOWED IN PART—CLAIMANT MUST ACCEPT AS FULL SETTLEMENT OR WHOLLY REJECT—REV. STATS. ARIZ. 1887, PARS. 414 AND 383, CITED.—Paragraph 414, *supra,* requires the claimant, if he be dissatisfied with the allowance by the board to either forego the part rejected or submit his claim as a whole to the courts. An agreement between the board of supervisors and the claimant, providing that the acceptance by the claimant of a warrant for a part of his claim shall not operate to affect the claimant's right to proceed by suit to establish his whole claim, is void.

3. SHERIFF'S FEES—EXECUTING WARRANT OF ARREST—OUTSIDE OF TER-
RITORY—REV. STATS. ARIZ. 1887, PARS. 1972 AND 1277, CITED.—To
execute a warrant of arrest is to actually effect the arrest by virtue
of and in obedience to the mandate of the writ, and make of the
person therein named the disposition required. A warrant of arrest
issued out of any court in this territory cannot be executed, in a
legal sense, outside of the territory. No fee can be, under the
statutes, *supra*, charged for travel beyond the territory in the
execution of a warrant of arrest.

4. COUNTIES—CONTRACTS—CHAIRMAN OF BOARD OF SUPERVISORS—DIS-
TRICT ATTORNEY—POWER TO BIND COUNTY.—Whether the board of
supervisors could make a valid agreement to pay compensation for
arrest made outside the territory is not determined. The chair-
man of the board, by virtue of his office, cannot bind the county,
nor can the district attorney.

5. EVIDENCE—MINUTES OF BOARD OF SUPERVISORS, BEST EVIDENCE—
PRESUMPTIONS—PAROL EVIDENCE NOT ADMISSIBLE—REV. STATS.
ARIZ. 1887, PARS. 394, 395, CITED.—Statutes, *supra*, require that
the clerk of the board of supervisors shall record all proceedings of
the board, and that the board must cause such a record to be kept.
It will be presumed that the board and its clerk have done their
duty and, if the board made an order, that there is a record of it.
Such record is the best and only evidence of such order. In
the absence of a showing that there is no record of the action of
the board, parol evidence is not competent to prove the action
of the board.

6. BOARD OF SUPERVISORS' POWER TO BIND COUNTY FOR MILEAGE IN
SERVING SUBPŒNA OUTSIDE OF THE TERRITORY—REV. STATS. 1887,
PAR. 579, CLAUSE 9, CITED.—Where it appears from the records of
the proceedings of the board of supervisors that the sheriff shall
be allowed mileage to subpœna witnesses without the territory in a
specified case, such employment is sufficient to bind the county;
the board having power, under statutes, *supra*, to employ means
to secure the attendance of necessary witnesses who cannot be
secured by the ordinary process of the court.

GOODING, C. J., dissents.

7. EVIDENCE—CONTENTS OF TELEGRAM—PAROL EVIDENCE—FOUNDATION
—COMMUNICATIONS BETWEEN PLAINTIFF AND THIRD PARTIES.—In
an action by a sheriff against a county for fees a witness was per-
mitted to testify to the contents of certain telegrams. This was
erroneous as the proper foundation was not laid for the admission
of parol evidence of their contents, and because communications
between a sheriff and a third person are incompetent to establish
an agreement between the sheriff and board of supervisors relative
to the subject-matter of such communications.

8. SHERIFFS—FEES FOR EXECUTING A WRIT OF ARREST—REV. STATS.
ARIZ., PAR. 579, CLAUSE 3, AND 1972, CONSTRUED—EXPENSES FOR

RETURNING PRISONER.—Under statutes, *supra,* for the arrest of a prisoner, and removing him to the court whence the writ issued, the only compensation to be allowed to the sheriff is two dollars for the service of the writ, and thirty cents for each mile, counting one way only, necessarily traveled in effecting such arrest and removal. In addition the sheriff is entitled to his expenses, other than personal, incurred in returning his prisoner.

9. SAME—FEES—SERVING SUBPŒNAS OUTSIDE OF COUNTY—MUST BE INDORSED UNDER PROVISIONS OF REV. STATS. ARIZ. 1887, PENAL CODE, PAR. 2054, CITED.—The sheriff is not bound to serve a writ of subpœna in a criminal case upon a witness non-resident of the county where the trial is to be had unless it be indorsed by the trial judge as provided by statute, *supra,* and no fee for service of writ not so indorsed can be allowed as a legal county charge.

10. SAME—SAME—MILEAGE IN UNSUCCESSFUL ATTEMPTS TO ARREST NOT ALLOWED—REV. STATS. ARIZ. 1887, PAR. 1972, CITED AND CONSTRUED.—Fees for mileage traveled in unsuccessful attempts to execute warrants of arrest will not be allowed.

GOODING, C. J., and WELLS, J., dissenting.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yavapai. James H. Wright, Judge. Reversed.

The facts are stated in the opinion.

H. D. Ross, District Attorney, and Herndon & Hawkins, and E. M. Sanford, for Appellant.

Plaintiff, having regularly made out and presented his claim for services to the board of supervisors, and it having been acted upon by said board, and part thereof audited and allowed, and a warrant drawn for the amount so allowed, and having accepted said warrant, is precluded from maintaining this suit. If plaintiff was dissatisfied with the amount allowed him, he had his remedy, which was to sue upon his claim as first presented to the board. He cannot accept the amount so allowed and then sue for a balance.

Although the stipulation was made and signed by the chairman of the board that cannot serve the plaintiff in this action, for the reason that the stipulation itself shows that it is not the act of the board of supervisors, and even if it were, it was made without any right or authority of law, and was and is entirely outside and beyond the scope of the authority of the

said board of supervisors; and, further, said stipulation does not refer to the claim sued on.

Sections 414 and 415 (p. 131) of the Revised Statutes of Arizona provide the method and the only method which can and must be pursued in presenting claims against the county to the board of supervisors.

Boards of supervisors are purely creatures of the statute—they derive all their power and authority from the statute. *Robinson* v. *Supervisors of Sacramento,* 16 Cal. 212, 213; *Linden* v. *Case,* 46 Cal. 174.

The chairman could not bind the board by signing said stipulation. Section 391 of the Revised Statutes of Arizona is, "A majority of the board shall form a quorum for the transaction of business."

Nor could the board delegate such authority to the chairman.

The *board* passes upon all claims; the *board,* or a *majority,* can bind the county, not the chairman or any one member thereof, in allowing claims or in any matters relative to such claims; but after passing upon the claim and drawing the warrant, they have no more power or authority with respect to any matter, neither their acts or knowledge in respect thereto can bind the county. *Johnson* v. *Supervisor Dist.,* 67 Mo. 319; *Clancy* v. *County of Marion,* 77 Ill. 488; *Benton* v. *Board of Supervisors,* 84 Ill. 384; *Harrison* v. *Liston Dist.,* 47 Iowa, 11.

After the board had acted upon the claim of plaintiff, and drawn a warrant for the sum allowed, they had under the law exhausted their power and authority in the matter.

In passing upon claims against the county the board acts judicially—the allowance or rejection of the claim is the determination of the matter; their determination occupies the same relation to a claim that a judgment does to an action. *Tilden* v. *Sacramento County,* 41 Cal. 74; *El Dorado County* v. *Elstner,* 18 Cal. 149; *Colusa County* v. *De Jarnette,* 55 Cal. 375.

When the plaintiff had accepted the amount allowed by the board in July, he could not legally have any further claim for same services as contained in his said demand, and the filing and presenting a claim for the balance which had been

rejected by the board was and is wholly unauthorized by the law.

The authority of the board was exhausted when the board had considered and allowed part and disallowed part. After this action by the board plaintiff, accepting the allowance, had no claim to present. *Ryan* v. *Board of County Commissioners,* 32 Minn. 138, 19 N. W. 653.

Where an account is filed with board and allowed in part, and a warrant, drawn for the sum thus allowed, is accepted by the claimant, he thereby waives his right to appeal (or sue for the part disallowed). *Hamilton County* v. *Bailey,* 11 Neb. 56, 10 N. W. 539; *Zirker* v. *Hughes,* 77 Cal. 235, 19 Pac. 423.

If a party sues in a court for a certain sum and recovers less than the amount sued for, and accepts the amount of the judgment, he cannot then appeal from such judgment. *Ind. District of Altoona* v. *District Township of Delaware,* 44 Iowa, 201.

When a party to a proceeding to assess damages accepted the amount assessed, he is not entitled to appeal. "A party cannot obtain the benefits of an adjudication and afterwards appeal therefrom." *M. and M. R. R. Co.* v. *Byington,* 14 Iowa, 572.

A garnishee who pays a judgment rendered against him cannot afterwards appeal. *Borgalthus* v. *F. & M. Ins. Co.,* 36 Iowa, 250.

When an act of the legislature makes an appropriation as in full payment of a demand, part of which was disallowed, the acceptance of the money is a bar to any further claim on account of such demand. *Massing* v. *State,* 14 Wis. 544.

In view of the proposition above set forth, and the authorities cited in support thereof, it is manifest that the complaint failed to state a cause of action.

The trial court permitted plaintiff to introduce in evidence the claim of plaintiff, which was made and filed with, and presented to, the board on August 24, 1889, a purported copy of which claim is attached to the complaint, and also permitted plaintiff to testify as to the items contained in said claim, to all of which defendant objected, for the reason that same

was incompetent and immaterial, and that it had not been shown that said claim had ever been acted upon by the board, and that the record of said board showed that the board declined to either allow or disallow the same, and had declined to act thereon.

Before the plaintiff would have the right to maintain his action against the county the law required of him to present his claim to the board, and further required that said board must reject or disallow some part thereof. This the plaintiff failed to show, and hence the ruling of the court in effect nullified that provision of the law.

If the board refused to act, they could be compelled to do so by *mandamus;* but they must act on the claim presented before claimant is authorized to sue the county. The mere fact that the board refuses to act is insufficient. *Price* v. *County of Sacramento,* 6 Cal. 255; *Fulkerth* v. *County of Stanislaus,* 67 Cal. 335, 7 Pac. 754; *McCann* v. *Sierra County,* 7 Cal. 121; *People* v. *Supervisors,* 28 Cal. 430.

The witness was then asked whether the board of supervisors authorized him to go and summon witnesses outside of the county and territory. The defendant objected on the ground that the records of the board would be the best evidence of what they had authorized him to do,—that the board must speak through their records,—and for the further reason that said board had no right or authority to make any such order or to give plaintiff any such authority. These objections were overruled by the court, and the plaintiff was permitted to testify that the board did give him such authority and promised to pay him mileage.

A deliberate body like the board of supervisors cannot be bound by acts *in pais,* the best and only evidence of its intentions is to be drawn from the record of its proceedings. *Phelan* v. *San Francisco County,* 6 Cal. 532.

The plaintiff offered in evidence the purported stipulation, signed by plaintiff and the chairman of the board, marked ''Exhibit C,'' and attached to plaintiff's complaint, to which defendant objected as incompetent, and that the same could not bind the defendant, it having been made without legal authority, and that the same was not the act of the board. The board is only the agent of the county, and must pursue

its authority and act within the scope of its power as granted, defined, and limited by the statute. *State* v. *Harris,* 96 Mo. 29, 8 S. W. 794; *Book* v. *Earl,* 87 Mo. 246; *Sturgeon* v. *Hampton,* 88 Mo. 203; *State* v. *Commissioners,* 18 Neb. 283, 25 N. W. 91; *Walsh* v. *Rogers,* 15 Neb. 309, 18 N. W. 135.

The board of supervisors has only the powers expressly conferred by law or necessarily implied, and cannot create a debt on the part of the county for any purpose except as provided by law. *Foster* v. *Coleman,* 10 Cal. 269; *San Joaquin County* v. *Jones,* 18 Cal. 327; *Linden* v. *Case,* 46 Cal. 172; *People* v. *Supervisors El Dorado County,* 11 Cal. 170.

One claiming compensation for services rendered must show a legal contract or a provision for such services. *Moon* v. *Board of Commissioners,* 97 Ind. 176; *Waymire* v. *Board of Commissioners,* 105 Ind. 600, 4 N. E. 890.

Boards of supervisors cannot increase the compensation of officers fixed by law. *Foster* v. *Coleman,* 10 Cal. 279; *People* v. *Supervisors of El Dorado County,* 11 Cal. 170.

While a public officer must discharge all the duties pertaining to his office for the compensation fixed therefor by law, yet he will not be allowed compensation for extra services, unless so authorized by statute. *Bayha* v. *Webster County,* 18 Neb. 131, 24 N. W. 457; *State* v. *Silver,* 9 Neb. 85, 2 N. W. 215.

The services performed by plaintiff outside the territory of Arizona were beyond his jurisdiction; the law makes no provision for payment therefor.

The board of supervisors had no authority to order or authorize him to go beyond his jurisdiction.

Should they undertake to do so, they would exceed the scope of their powers.

Before an officer would be entitled to recover fees from county, he must show, first, that a specific compensation is allowed by law for such services; and second, that express authority exists for paying same. *Waymire* v. *Powell,* 105 Ind. 600, 4 N. E. 866; *Board* v. *Gresham,* 101 Ind. 127.

There is no liability for any cause whatever, except such as is created by statute. *Monroe County* v. *Flint,* 80 Ga. 489, 6 S. E. 173.

The plaintiff charges mileage for serving and attempting to serve subpœnas outside of his county when the same were not indorsed by the district judge, as required by section 2054 of the Criminal Code. The allowance of these charges was error. *Washoe County* v. *Humboldt County,* 14 Nev. 123.

The plaintiff charges mileage for going to serve process which he failed to serve. Plaintiff is not entitled to any mileage unless he actually executed his process. *Ex parte Wyles,* 1 Denio, 658.

Baldwin & Johnston, for Appellee.

O'Neill's district, for purposes of serving warrants of arrest, was co-extensive with the territory. Pen. Code Ariz. 1887, sec. 1277.

It was his imperative duty to cause the arrest of the defendants anywhere in his district. Pen. Code Ariz. 1887, sec. 227.

The action of the board of supervisors in fixing the salary and the rendering of the services upon the faith of such action constituted a contract to which the sheriff was a party. The consideration therefor, flowing from plaintiff is found in the performance of the services. The county cannot set aside and disregard the contract. *Holmes* v. *Lucas County,* 53 Iowa, 213; *Mitchell* v. *Commissioners of Leavenworth County,* 18 Kan. 188.

The mileage provided by statute is not limited to traveling done by an officer within the boundaries of the county or district of which he is such officer. *Cunningham* v. *San Joaquin County,* 49 Cal. 324; *People* v. *Pearson,* 3 Scam. 270; *United States* v. *Sanborn,* 28 Fed. 299; *Mylius St. L. F. and W. R. R.,* 31 Kan. 234.

The sheriff is entitled to mileage for each of five prisoners in removing them from before the magistrate to the county jail. *Sherman* v. *Santa Barbara County,* 59 Cal. 483.

*United States* v. *Ralston,* 17 Fed. 899; *Berry* v. *St. Francois County,* 9 Mo. 213; *Bringolf* v. *Polk County,* 560; *Harding County* v. *County of Mtg.,* 55 Iowa, 43, 7 N. W. 396.

A vote of a corporation may be presumed from other acts, though there is no proof of such vote on the corporate record;

for the omission of the corporation to record its own doings cannot prejudice the rights of a party relying upon the good faith of an actual vote of the corporation. *Pixley* v. *W. P. R. R. Co.,* 33 Cal. 192, 91 Am. Dec. 683; *United States Bank* v. *Dandridge,* 12 Wheat. 70; *City of Indianola* v. *James,* 29 Iowa, 282; *City of Davenport* v. *P. M. and F. I. Co.,* 17 Iowa, 276; *Olcott* v. *Tioga R. R. Co.,* 27 N. Y. 558, 559; *Gillett* v. *Commissioners of Lyon County,* 18 Kan. 413.

KIBBEY, J.—This was a suit in the court below by the appellee against the appellant to recover compensation for services alleged to have been performed by him as sheriff of Yavapai County. There was judgment for appellee. The complaint is in two counts,—the first being for a balance alleged to be due for services rendered during the quarter year ending March 31, 1889, and the second for a balance for the quarter ending June 30, 1889. There was a demurrer to each count of the complaint upon the ground that neither of them stated facts sufficient to constitute a cause of action against the defendant. The demurrer to the first count of the complaint was sustained. The demurrer to the second count was overruled; and this ruling is assigned as error, and presents the first question for our consideration.

It is alleged in the second count of the complaint that, during the period beginning April 1, 1889, and ending June 30, 1889, the plaintiff, as sheriff of Yavapai County, performed certain duties imposed upon him by law, the various items of which are enumerated; that on the 24th of August, 1889, he made out a proper account thereof, and a statement of his legal compensation therefor, in form and verified as prescribed by law, and on that day presented such account and claim to the board of supervisors of Yavapai County, the time of presentation being within six months next after the last item in the account had accrued; that by virtue of a contract made between himself and the county, through its board of supervisors, on or about the first day of April, 1889, the appellee performed, and the county agreed to pay for, certain specified services; that certain other services for which he claimed compensation were imposed upon him by law; that, as credits upon certain of the items mentioned in the complaint, the county has paid him sums aggregating $6,044.85, leaving

unpaid and due the sum of $3,442.05; that after the presentation of his said accounts and claims, as before mentioned, and before the filing of this complaint, the board of supervisors failed and refused to allow the same, except to the extent of $6,044.85, and, after the payment of that amount, rejected the residue of his claim; that such account and claims have been presented to the board of supervisors more than one day before their rejection; that the plaintiff has never been indebted to the county; that he has never neglected to make his proper returns and reports as required by law, and has never willfully neglected or refused to perform any of the duties of his office; that heretofore, at the regular April term of said board, the plaintiff presented his account for $602.60, for certain of the items set out in the complaint; that by mistake and miscalculation he made his claim for that sum, when in fact he was lawfully entitled to the sum of $997.50; that the plaintiff is dissatisfied with the failure and refusal of the board of supervisors to allow his claim; that the sum of $5,834.85, paid as credit upon his claim, was paid by the board of supervisors, and received by the plaintiff, upon the express understanding and agreement between the board and the plaintiff that the receipt of said sum should in no wise prejudice or otherwise affect the plaintiff's right to bring his action for the recovery of the balance, and that said credit was received by the plaintiff under protest, and only upon such understanding and agreement. A copy of the agreement referred to is appended to the complaint as an exhibit. It is as follows: "This agreement between the county of Yavapai, through its board of supervisors, acting by its chairman, on the first part, and William O. O'Neill, sheriff of said Yavapai County, in the territory of Arizona, of the second part, witnesseth: That whereas, the bill of the said sheriff for fees and perquisites for the quarter ending July 1, 1889, as presented to the said board of supervisors, is for the sum of $8,199.15; and whereas, the said board are convinced and satisfied that, under the law, the above sum is too much for the services rendered to the said county, but that the sum of $5,834.85 is an adequate, reasonable, and liberal allowance to said sheriff under the law: Now, therefore, the said board, acting as aforesaid, hereby agree to draw their warrant and warrants to said sheriff for said last amount with the express

understanding that, should said sheriff be dissatisfied there-with, and bring suit upon said bill to recover the whole thereof, or any sum greater than that allowed, the amount so paid shall be taken as a general credit upon said original bill, and not as an acknowledgment of the justness of each and every item or items thereof, but the legality and justness of each and every item and items of the same shall be determined by and in the courts; and should the final determination of the courts be and find that the said sum so allowed by the board be more than the law allows for said services, then the said county is to have a credit for such difference. And the said sheriff, on his part, agrees to and accepts the above proposition with all of its conditions, and further agrees to take no advantage of said payments, but to litigate the same as a whole, and regardless of said payment, testing each and every item of the same. It is further understood that the receipt of such said sum is no bar to any action, and shall in no way or manner lessen the rights of the said sheriff in any proceeding that he may hereafter bring against said county of Yavapai upon said account." Section 578 of the Revised Statutes of 1887 (sec. 1, ch. 14, tit. 13, "Counties") provides that "accounts for county charges of every description must be presented to the board of supervisors to be audited as prescribed in the act." Section 579, among other things, provides that the compensation of the sheriff for executing process in criminal cases is a county charge, and so "the expenses necessarily incurred in the support of persons" committed to jail. Section 408 provides that every person having a claim against the county, except for compensation due to jurors and witnesses, or for official salaries, by which some express provision of law is made a demand against the county, shall, within six months after the last item of the account accrued, present a demand therefor, in writing, to the board of supervisors of the county against which such claim or demand is held, verified by the affidavit of himself or agent, stating minutely what the claim is for, and specifying each several item, and the date and the amount thereof. Section 414 provides that "where the board [of supervisors] finds that any claim presented is not payable by the county, or is not a proper county charge, it must be rejected. If they find it to be a proper county charge, but greater

in amount than is justly due, the board may allow the claim in part, and draw a warrant for the portion allowed, on the claimant signing a receipt in full for his account. If the claimant is unwilling to receive such amount in full payment, the claim may be again considered at the next regular succeeding session of the board, but not afterwards." Section 415 provides that "a claimant dissatisfied with the rejection of his claim or demand, or with the amount allowed him on his account, may sue the county therefor at any time within six months after the final action of the board, but not afterwards."

It will be observed that the plaintiff in this case had presented his claim for the items embraced in his complaint (except as modified to correct an alleged error in a former account) to the proper board of supervisors; that his claim had been by it considered, and allowed for a sum less than the amount claimed by him; and that he had, before this suit was begun, received warrants for the amount so allowed. The question presented by the demurrer devolves upon us the consideration of the legal 'effect of the agreement between the board of supervisors and the appellee, whereby he received the sum allowed by the board upon the understanding (and the board expressly agree) that such payment should not operate to affect appellee's right to litigate the whole claim. Preliminary to that, however, is the question whether the method prescribed by the act we have quoted from for the allowance and enforcement of claims against the county is exclusive, or whether a claimant may not, in the first instance, sue the county, without resort to the method prescribed. In many states it is expressly provided by statute that actions against municipal or *quasi* municipal corporations, upon any demand whatsoever, cannot be maintained until the claim therefor shall have been presented to the proper officer of the corporation charged with the duty of auditing and allowing claims for allowance or rejection. In our statute there is no such express limitation of the right to maintain an action against the county. By section 384 a county may sue or be sued. The fifth clause of section 522 (of the same title) provides that the county treasurer shall "disburse the county moneys only on county warrants issued by the board of super-

visors, signed by the chairman and clerk of said board, or as provided by law." Section 407 provides that "no payment shall hereafter be made from the treasury of any of the counties of this territory unless the claim or demand shall be duly allowed according to the provisions of this act." Construing these several statutory provisions together, we think it a fair inference that the legislature intended that the presentation of every claim against the county to the board of supervisors for its action should be a condition precedent to the maintenance by the claimant of an action thereon; that the remedy so prescribed for the establishment and enforcement of claims for money against a county is exclusive. Upon that part of the claim, then, embodied in the complaint, which includes items that were not presented to the board, and which plaintiff alleges were omitted by mistake, applying the above rule, there can be no recovery. That manner of the presentation, allowance, and payment of claims against the county prescribed by the statute from which we have quoted, being exclusive of any other, the right of the plaintiff to maintain this action is governed thereby, and, as well, is the board of supervisors.

It is a salutary rule that requires the claimant, if he be dissatisfied with the allowance by the board, to either forego its part rejected, or submit his claim as a whole to the courts. It would be unfair to the county that he should accept that part of the determination of the board that is to his advantage, and make the other a subject of litigation. The observance of the rule that, when his claim is only partially allowed, the claimant must accept the part so allowed in satisfaction of his whole claim, or litigate it as an entirety, would directly tend to the discouragement of the presentation of fictitious and extortionate claims against the county. It is expressly provided that the board shall draw its warrant for the portion allowed upon the claimant filing a receipt in full for his account. This is necessarily, by construction, prohibitive of the issuance of the warrant upon any other condition; and of this the plaintiff must have been as well aware as was the board of supervisors, and the effect of the receipt by the plaintiff was to release the county for further liability. The board of supervisors had, in the premises, only such powers

as were expressly conferred upon them, and those necessarily implied from those expressed. It not only had not power conferred upon it to waive this condition, but that power was distinctly withheld; and, moreover, the alleged agreement upon the part of the board is wholly without consideration. If any illegal payments had been made, they could, under other provisions of the statute, have been recovered; and the agreement of the appellee that the county should not be bound by its order of allowance, and that he would take no advantage of it, gave to the county no right which it did not already have by statute. Rev. Stats., sec. 383, same title. It follows, therefore, that the agreement between the board of supervisors and the plaintiff, providing that the acceptance by plaintiff of the warrant for a part of his claim should not operate to affect the plaintiff's right to proceed by suit to establish his whole claim, is void, and for that reason the demurrer should have been sustained.

While this conclusion requires us to reverse the case without consideration of the other questions presented, yet, as it is known to each of the members of this court sitting as district judges, that questions are constantly arising concerning the compensation of sheriffs, we shall consider those presented by this record. The first item objected to is one for $678, for mileage for 2,260 miles' travel to serve warrants of arrest. The plaintiff was allowed to testify that, when he first received notification of the robbery alleged to have been committed by the men in the accomplishment of whose arrest he alleges he necessarily traveled 2,260 miles, he went to the district attorney of the county, and to Mr. Behan, the chairman of the board of supervisors, and told them he was going after the train robbers,—those subsequently arrested; that Mr. Behan declined to let him take the proper deputies; that Mr. Ross, the district attorney, was non-committal, but said that the A. and P. R. R. would pay for the capture; that he thereafter began a pursuit of the alleged robbers, finally effecting their arrest in Utah, whence he returned them to Prescott, the county-seat of Yavapai County, Arizona. Other testimony relative to the difficult character of the country traversed in effecting the capture, the manner of the capture, and the dangers encountered therein was permitted, but it is not material

to the consideration of the question. Of the 2,260 miles alleged
to have been necessarily traveled in effecting this arrest a con-
siderable proportion was in Utah. It appears that the plaintiff
had in his hands a warrant for the arrest of the train robbers,
issued by a justice of the peace of Yavapai County, and that
it was upon this warrant that he assumed to make the arrest.
Section 1972 of the Revised Statutes of 1887 (title "Fees and
Salaries") fixes the fees of a sheriff for executing a warrant
of arrest or capias, or making an arrest without warrant, at
two dollars. For each mile he may be compelled to travel in
executing criminal process, summoning or attaching witnesses,
thirty cents, to be charged one way only. By section 1277 of
the Penal Code it is provided that "a warrant may be directed
generally to any sheriff, constable, marshal, or policeman in
this territory, and may be executed by any of those officers
to whom it may be delivered in any county." This section
confers upon the sheriff, or other officer in whose hands the
warrant may be, the power to execute it anywhere within the
territory; but of course the warrant would have no extrater-
ritorial vitality. The statute prescribes a fee for executing
the writ, and mileage for the distance necessarily traveled in
executing it. To execute a warrant of arrest is to actually
effect the arrest by virtue of and in obedience of the mandate
of the writ, and make of the person therein named the disposi-.
tion required. A warrant of arrest issued out of any court in
this territory cannot be executed in a legal sense outside of
the territory. Whatever was done in Utah in the way of pur-
suit and capture was not there done, and could not there be
done, in the execution of the writ, for there the writ was not
a writ. It is our conclusion, then, that no fee can be, under
the statute, charged for travel beyond the territory, in the
execution of a warrant of arrest; and to the extent that such
fees were allowed, the judgment of the lower court is erroneous.
Whether the board of supervisors could make a valid agree-
ment to pay compensation for such services we need not here
decide. It is sufficient to say, for the purpose of this case,
that it did not do so. The chairman of the board, by virtue
of his office, cannot bind the county, nor can the district
attorney.

The next item for our consideration is one for $1,115.10, for

services and mileage in the service of certain subpœnas. The plaintiff was allowed to testify, over the objection of the appellee, that the board of supervisors authorized him to go and serve these subpœnas. This was error. The statute requires that the clerk of the board must record all proceedings of the board, and make full entries of all their resolutions and decisions on all questions concerning the raising of money, and for the allowance of accounts against the county. Rev. Stats., 1887, sec. 394. The succeeding section provides that the board must cause such a record to be kept. It will be presumed that the board and its clerk have done their duty in this particular, and if the board made such an order, or gave such authority, that there is a record of it; and the record, if there be one, is the best and only evidence of the fact. We are aware that there is some conflict of authority on the question of the admissibility of parol evidence, or other evidence than that of the record itself required by statute of proceedings of county boards, to prove the acts of such boards. A few have held that the board can only speak by its records; others hold that omissions from the record may be supplied by parol evidence; and still others that parol evidence is of equal degree with the record. The extent, however, to which it is here necessary to go is that, when there is a record of the proceedings of the board,—and it will be presumed, in the absence of a showing to the contrary, that there is one,—parol evidence is not competent to prove the action of the board of supervisors. Of the item for $1,115.10, a large proportion is for mileage for travel outside of the territory. That part of the charge would not, in the absence of an agreement by the board of supervisors otherwise, be a proper charge against the county. It appears, by the minutes of the board of supervisors, that it took the following action: ''On motion it was ordered that the sheriff be allowed mileage to subpœna witnesses in Utah in the cases of the train robbers.'' The question, then, presents itself as to the power of the board of supervisors to make such an order. It is of course true, as elsewhere said, that the writs of the several courts of this territory can have no legal effect outside of our territorial limits. It is among the functions of a county government to aid the local courts in the administration of

justice; to that end to provide court-houses for the courts, and light, fuel, and attendance thereon; to supply proper books and stationery; to provide money for the payment of officers for summoning witnesses, and the arrest of criminals. In the exercise of this function the board of supervisors are circumscribed by statutory provisions on these subjects, where there are such provisions. It may often happen that the attendance of witnesses of great importance resident out of the jurisdiction of any of the courts of the territory may be secured at those courts upon mere notification to them of the fact that their attendance is requested. It appears in the train-robber cases, spoken of in this record, that witnesses not resident of the territory did appear after the notice to them that their attendance was desired. Their absence might have prevented the conviction of those train robbers. There is no express provision in the statute for the compensation of the sheriff for going out of the territory upon such service; but clause 9 of section 579 provides that the contingent expenses necessarily incurred for the use and benefit of the county shall be a county charge. To hold that the board of supervisors may not employ some one to notify such non-resident witnesses, and thereby secure their attendance when it could not otherwise have been secured, will in many cases result in the defeat of the very purpose of the organization of courts. We think that the board has the power, acting, of course, reasonably, and in the exercise of a careful discretion, to employ the necessary means to secure the attendance of necessary witnesses who cannot be secured by the ordinary process of the court. The sheriff, in such a case, acts not as sheriff, but as a mere messenger; and we think, if he was actually employed in that service, he is entitled to the compensation agreed upon, if any be agreed upon, between himself and the board of supervisors. If none was agreed upon, then he would be entitled to reasonable compensation, to be fixed by the court in the event of a suit. We think the minute entry in the record of the proceedings of the board is sufficient evidence of such employment.

The next error complained of by appellant is that the court permitted a witness for the plaintiff to testify to the contents of certain telegrams relative to the whereabouts of an alleged

criminal. This was erroneous, for two reasons: The proper foundation was not laid for the admission of parol evidence of the contents of a telegram; and because communications between a sheriff and a third person are incompetent to establish or tend to establish an agreement between the sheriff and the board of supervisors relative to the subject-matter of such communications.

Among the items charged by the plaintiff in his account, as sheriff, against the county, are several for removing a prisoner from the place of arrest to the county jail, as well as for mileage from the county-seat to the place of arrest. The statute provides compensation "for removing a prisoner, for each mile necessarily traveled, to be charged one way only [thirty cents,] and for each guard the same. Insane persons are prisoners within the meaning of this act. For each mile he may be compelled to travel in executing criminal process, summoning or attaching witnesses, to be charged one way only, 30 cents." Rev. Stats. Ariz. 1887, par. 1972. To execute criminal process, as we have before said, is to do what is in the writ commanded. A warrant of arrest in the form prescribed by our Penal Code not only commands the arrest, but the bringing of the prisoner to the place of holding the court whence the warrant issued. To execute, therefore, a warrant, the officer must not only arrest, but "remove" the prisoner from the place of arrest to the court whence the writ issued. For this particular service, that is, for arresting the prisoner and removing him thence to the place named in the writ, the statute provides a compensation of thirty cents per mile necessarily traveled, one way only. It seems to us that the contention of plaintiff, that his compensation for executing such process is earned when he shall have effected the arrest merely is not tenable; the removal of the prisoner is a part, in such case, of the execution of the writ. There are many cases where a prisoner may be removed, as from the territorial prison to the county-seat on a reversal of a judgment of a district court; the removal from a magistrate's court to the county jail after a preliminary examination; upon the order of a committing magistrate after trial or upon a commitment; upon a change of venue, etc.,—and it is compensation for these removals that the statute contemplates, and not

the removal of a prisoner from the place of arrest to the county-seat. The case of *Sherman* v. *Santa Barbara Co.*, 59 Cal. 483, cited by appellee, is not in point; the case of *Cunningham* v. *San Joaquin Co.*, 49 Cal. 323, is based upon a statute differing from ours, rendering it inapplicable to the question before us; and we do not think that the language used in the third clause of section 579 of the Revised Statutes of 1887 will warrant the construction put upon the fee-bill by the court below. The whole object of section 579 is to make the sheriff's legal compensation and expenses, elsewhere fixed, in criminal cases, a county charge. For the arrest of a prisoner, and removing him to the court whence the warrant issued, the only compensation to be allowed to the sheriff is two dollars for the service of the writ, and thirty cents for each mile, counting one way only, necessarily traveled in effecting such arrest and removal. In addition to that,—not by way of compensation, however, but as necessary expense incurred by him,—the sheriff, or other officer, effecting the arrest and removal, is entitled to be reimbursed the amount of expenses incurred by him in returning his prisoner, or for transportation of the prisoner, and his subsistence, excluding of course, in the estimate of expense, any part of the personal expense of the officer.

Another objection to the account is that among the items charged by appellee are several for mileage traveled outside of Yavapai County to serve subpœnas in criminal cases upon which there had not been indorsed the order of the judge of the district court that the witness named in the writ should attend, under the provision of section 2054 of the Penal Code. That section provides that a witness in a criminal case, non-resident of the county in which the case is to be tried, shall not be obliged to attend unless an order to that effect shall have been indorsed by the judge of the court upon the subpœna, requiring such attendance. Until such an order shall have been indorsed, the writ lacks its chief, essential element,—that is, the positive command of the court for attendance, for the violation of which the witness may be subjected to penalties. It is practically not a subpœna, and is ineffectual to accomplish the purpose of such a writ without the indorsement so required. We are of the opinion that the sheriff was not

bound to serve a writ of subpœna in a criminal case upon a witness non-resident of the county where the trial is to be had unless it be so indorsed; that its service is not contemplated by the statute; and, consequently, no fee can be allowed therefor as a legal county charge.

Other items charged, which are objected to, are for mileage traveled in unsuccessful attempts to execute warrants of arrest. We think it very clear that fees for mileage cannot be allowed unless the officer shall have executed the writ. The statute provides that for each mile necessarily traveled in executing the process there shall be allowed thirty cents, to be charged one way only. Par. 1972. The case of *Davis v. Board*, 37 Minn. 491, 35 N. W. 365, is relied on by appellee to warrant a contrary construction of the statute. That case, however, turns upon a provision of the Minnesota statute that does not appear in our statute; and even then the reasoning of that case is not satisfactory. The rule we have announced we think better calculated to serve public interests by exciting officers to diligence and promptness in the service of criminal process. These items, therefore, are not proper county charges. The judgment of the court below will be reversed, and this cause remanded, with instruction to sustain the demurrer to the complaint, and take other proceedings in accordance with this opinion.

Sloan, J., concurs in the foregoing opinion.

WELLS, J.—I concur, except to that part of the opinion which holds that an officer having a warrant of arrest cannot receive mileage traveled in unsuccessful attempts to execute such warrant. I hold that the officer should receive, by way of compensation, such mileage actually traveled as is reasonable, where an honest effort is made to serve the process, although he failed to make the arrest, or return the prisoner.

GOODING, C. J.—I concur in the decision, and in the opinion, except that part of the opinion that recognizes authority in the board of supervisors to send an agent or messenger out of the territory to procure the attendance of witnesses, and to make a contract binding the county for the

expense thereof; except, also, that part of the opinion that
holds a sheriff not entitled to compensation unless he actually
arrests a prisoner for whom he may have a writ or warrant.
On these two propositions I dissent.